The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit.   Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right. I want to welcome counsel here, and we are ready to begin. Counsel Ms. Strickland, if you wish to proceed, please do so. Thank you. May it please the Court. My name is Caryn Strickland, and I am the Plaintiff Appellant. I would like to reserve 10 minutes for rebuttal. That'll be fine. Thank you. This case involves the right of the judiciary's 30,000 employees to be meaningfully protected from workplace sexual harassment, sex discrimination, and retaliation. As a victim of sexual harassment, because of the District Court's rulings, I am required to be my own advocate on this significant constitutional issue. Because I think it will help answer the Court's questions, I would appreciate the opportunity to have five to six minutes to summarize and contextualize the facts of this case, which I personally experienced, and then I would be happy to answer the Court's questions. J.P. Davis, the FDO's first assistant and principal deputy, sent me an email entitled Más Dinero, which the EDR investigation found can, quote, clearly be inferred to be a quid pro quo request that supports Caryn's claim of sexual harassment. Davis told another supervisor that I needed, quote, to get slapped and smacked a bunch. He made contrived excuses to be alone with me, and the judiciary's fair employment opportunity officer, Nancy Dunham, testified that there were signs of, quote, physical danger and a risk of something happening like a sexual assault. Dunham testified that Davis' behavior was, quote, classic sexual harassment. Like a spurned suitor, Davis engaged in professional sabotage. He even told the appellate chief that I had a, quote, fuck-off attitude and committed fireable offenses. In response to my complaints, federal defender Anthony Martinez forced me to meet with my harasser and compared his supervisory authority over me to a marriage that requires compromise. After I reported my complaints to the AO, which is protected activity, Martinez berated me for going to an outside party and stated that he was being blamed and attacked for something that was not his fault. He stated, but there was no physical contact, which the investigation found were words to the effect, at least you were not touched. Martinez rejected Dunham's common sense suggestion to transfer me to a full-time appellate position away from Davis' supervision of the trial unit, which the district court found would have been, quote, feasible and prudent. Martinez also rejected a transfer to the Asheville office, claiming there was no office space, even though he later offered to set up a cubicle for a summer intern, and discovery revealed that FDO management had been discussing the need for a full-time attorney in Asheville. Thereafter, Martinez sabotaged the EDR process by falsely claiming to James Ishida, the EDR coordinator, that Dunham was my personal friend and I was conspiring with her to exploit his office. In reality, Dunham and I had never even met. Without my knowledge, Ishida relayed Martinez's patently false and retaliatory allegations to the Chief Judge of the Fourth Circuit, where I practiced law as a federal defender. Martinez openly admitted that he always believed Davis. Martinez coordinated his interview testimony with Davis and even shared my confidential mediation documents with him in blatant violation of the plan. The district court found that Martinez's actions were obviously inappropriate, but the district court did not even consider, because it excluded from trial, other informative allegations, including that Martinez described a zealous female prosecutor as a, quote, fucking bitch. Defendants did not investigate appropriately or take prompt and effective remedial action. When the investigation report finally came out after more than four months, which the district court found was far too long, defendants held any decision about discipline, quote, in abeyance, even though the investigation found that Davis made a quid pro quo request and recommended corrective action against both Davis and Martinez. Proceeding to a final hearing would have been futile because the only remedy that would allow me to work safely in that office, corrective action, would not have even been considered until after the hearing was over. Defendants also refused to disqualify Martinez from the EDR process, even though the investigation found that he was so biased that he could, quote, cause more damage. Even if I had gone to a final hearing, the judicial integrity officer, a national resource on the plan, expressed what the district court described as reasonable uncertainty and concern over how remedies could be enforced against a federal defender office. The district court itself described this issue as, quote, regrettably obscure. Nearly a full year after I first raised my complaints and several months after I forcibly resigned, Martinez was allowed to decide whether Davis would be disciplined, even though Martinez himself was counseled based on the same complaint. Martinez refused to follow even the investigation's grossly insufficient recommendation that Davis' harassment be documented to prevent further misconduct. As Ishida testified, however, any discipline against Davis was not the concern of the Fourth Circuit. Even if I had continued working at the FDO, I would not have been adequately protected from further sexual harassment and retaliation. If this ho-hum response to a claim of this magnitude, as the district court found, is upheld, then judiciary employees who are already reluctant to report wrongful conduct will have even less reason to trust the plan. I would like to talk about the due process claim and, in particular, the fact that this court stressed that the standard is one of futility. This court stated, and this is at pages 355 to 356 of the opinion, that if the EDR process was futile, then the more suitable alternative would be to withdraw the complaint and accept the Fourth Circuit clerkship. And, of course, this court named one set of facts, which were proven at trial, to show futility. But the district court seemed to make a clear threshold error of law in assuming that that set of facts was the only set of facts and that it could not consider any other evidence showing that proceeding through the EDR process would be futile. I have a question about that. In your opening remarks, you said that there was an uncertain remedy if you had proceeded through Chapter 10 to the final hearing. But why is uncertainty futility? Because uncertainty means there could be a remedy if you were to prevail on your factual claims. So, I guess I didn't quite follow the logic of your earlier comment. Yes, Your Honor. I would break the answer to that question into two parts. So, the first part, I believe the part of my remarks that you were referring to, was about the decision to hold discipline and abeyance. And so, that could not have been addressed. Martinez's actions could not have been reviewed, that portion of the remedy, corrective action, even if I had gone to a final hearing, because it wouldn't have even been considered until after a final hearing. And it was very clear that whatever Martinez did was not the concern of the Fourth Circuit and was not even considered reviewable. Now, the second part of your question, remedies in a final hearing, I mean, first of all, I would say the primary purpose of the EDR plan is to implement Title VII standards, including the obligation to have prompt and effective corrective action taken on sexual harassment. So, if that isn't even considered as part of the final hearing, it seems like I don't even know what I could even ask for, because that would be the central remedy. But even putting that aside, the question about uncertainty... Well, one remedy that was given was that you no longer saw or interacted directly with your harasser. Am I correct about that? Your Honor, I would not call that a remedy. That was... I'm asking a factual question. What I understood from the district court's findings was that you no longer had contact with him. Is that true? Well, I was put on indefinite telework because Martinez said that there was no office space in a different office. And that is not a remedy, because measures that make a victim or a complainant worse off are per se ineffective. Now, the reason why telework had to occur was because I felt, as Ishida testified, I was genuinely afraid of him. I was afraid of being in that office, and Martinez gave me no alternative except for telework. And so, telework was not a remedy. Telework was actually a sign that they were unwilling to take any corrective action or do anything meaningful about the harassment. I do want to get to the other part of it. Well, I understand that it wasn't your preferred response, but I don't understand why it's not meaningful. Because if you're afraid of someone and you want to be separated from them, and you are in fact physically separated from them, why isn't that meaningful, even if it's not what you would have preferred? Well, I mean, I guess I would say, you know, you can't really do your job when you're completely cut off from your colleagues because you haven't been given any alternative. And the district court recognized that. But I would also say that the ways in which Davis engaged in harassment and sabotage were not limited to being physically threatening. I mean, he continued to try to sabotage my work performance. He asked other employees to spy on me. He continued to exercise his influence in trying to interfere with the EDR process. He received confidential information. He repeatedly reached out to the EDR coordinator with persistent and inappropriate emails. I mean, this was a continuing course of conduct that went on until I resigned. Because not only were they not willing to do anything, when they actually got the investigation report that had this evidence of quid pro quo harassment and recommended that corrective action be taken, they made an official decision to do nothing. And what feminist majority says, citing Supreme Court precedent, is that an official decision not to remedy harassment is deliberate indifference. And from a due process perspective, it certainly does not comply with the plan, since the plan requires that prompt and effective corrective action be taken on harassment. But I also want to get to the other part of your question about remedies and uncertainty. McCarthy v. Madigan is precedent from the Supreme Court about when exhaustion is not required. And that case provides, I think, very good markers of why exhaustion was not required here. Because exhaustion is not required when there is an unreasonable or indefinite timeframe for action. We have that. It's not required when the administrative body is biased or has predetermined the issue before it. We have that. We have the fact that Martinez was the final decision maker on disciplinary action, which was the main issue in the EDR complaint. And then the most important is when there is some doubt. The Supreme Court used the word some doubt about the ability of the administrative forum to order relief. Doubt is synonymous with uncertainty. So there is no legal requirement. In fact, what the district court found, that there was reasonable uncertainty and concern, that is futility. When Martinez, I understand as part of the mediation process, Martinez offered you his office in Asheville. Why did you not accept that? Well, I think you have to look at the larger context of that, which is that, first of all, he had been stonewalling on that very issue, claiming that an office space was not available for six months. We know that that's not true. We know that there was a cubicle offered to an intern and that they were actually discussing the need for a full-time attorney during this time. But fast forward, by the time we got to that point of the process, six months later, they had made a decision, an official decision, to hold any discipline in abeyance. And so a simple office transfer was not going to resolve this. It was not going to resolve the underlying conduct. And in fact, there was actually a potential, particularly with the rumors about me, that I was exploiting this process to try to go to Asheville, which was not true. Having that be the sole remedy without any disciplinary action being considered would have actually ostracized me even more amongst my colleagues and signaled to them that putting an intern in that office was more important than me and resolving my complaint. But I do want to talk about the Supreme Court case that you cited a moment ago, discussed on futility. Was it in your brief? It was cited in our reply brief in response to their argument about exhaustion. Yes, yes. No problem. So I do think that the central inquiry here is futility. And I want to reiterate that there are at least four reasons why a final hearing would have been futile. I see you're down to five minutes. Do you want to reserve some more time of yours? Does that include rebuttal or is that? Let me ask the clerk. Does she have a rebuttal time in addition to the time remaining or not? Yes, Judge Gilman, she does. This is her initial argument on the clock right now. Excuse me. Proceed. Okay, thank you. I appreciate the clarification. So the four reasons why a final hearing would have been futile, one that I've already said, which is that they held any decision about discipline, quote, in abeyance until a final hearing. And I think that I'm sorry, until after a final hearing would have been over. I think that this is really important because it goes to a fundamental misconception in decision at page 253, where the district court says the defendants were unable to remedy my harm because I withdrew my complaint before they could do so. That is not true. The defendants had the final investigation report on January 11th, 2019, which was more than two months before I withdrew my complaint and resigned. They took no action and they told me that they would take no action until after a final hearing. So the second reason. It sounds like it is even more important to have gone to the final hearing. If you're told, fine, we will make all these decisions, including the ones that you're focused on after a final hearing. And there is no final hearing. It just I just don't follow your logic. Well, Your Honor, what that would mean is that instead of what is required on the plan under the plan, which is for the employer to investigate appropriately and take prompt and remedial corrective action. That's the whole point of a final hearing is that a person a complainant has not received what they want before then. Yes, because of it. So that's true in every case. If a person has received what they want, they don't need a final hearing. And if they have not, which was your situation, then that's what the final hearing is for. And I guess I just don't understand. Yes, Your Honor. And I think the main answer to your question is that the main that issue would not have been able to be reviewed in a final hearing or after a final hearing because Martinez was allowed to be the final decision maker. Nobody could review that. Is she to testify that only the executive, the unit executive had authority? I thought I thought the district court made a finding contrary to what you're saying about Martinez being the final decision maker. Am I incorrect about that? It's possible. There's a lot in there. Your Honor, the district court made a finding that Martinez had unreviewable decision making authority over disciplinary action of Davis. That it was not the concern of the Fourth Circuit. And in fact, what Ishida said in a March 25th, 2019 memorandum to the chief judge, he said that because of Martinez's role as the unit executive, he was the only one who would have any authority to decide whether Davis would be disciplined. Decision maker over you, though, as to what remedies you would be entitled to, that would be the judicial officer's decision, right? Well, yes, Your Honor. But if there was inadequate corrective action taken against a sexual harasser who made a victim feel physically threatened in their working environment, if that is not even part of what is reviewed in the final hearing, then the final hearing is a sham. Didn't Martinez testify that he would, of course, do whatever Chief Judge Gregory said he should do? Well, I guess I'm not quite understanding your question because the question about disciplinary action would not have even been within the scope of that determination. There would have been no authority for Chief Judge Gregory or anyone else to say, Martinez, what you did here was unacceptable. And, of course, that issue wouldn't have even been reviewed because it would not have even been decided after a final hearing. I mean, I think it just goes to what the defendant's position is fundamentally is that an employee who is subjected to sexual harassment in their working environment does not have any substantive right to have the employer take actions to stop the harassment and prevent it from recurring, that that is actually a separate decision that is within their discretion to delay indefinitely to hold in abeyance. And I fundamentally disagree with that. But if I may, just in my remaining time, since I'm going into my rebuttal time, there are three other reasons why going to a final hearing would have been futile. The second reason is the refusal to disqualify Martinez even though he was so biased that he could cause more damage if he was allowed to participate. He would have had significant influence over the final decision at a minimum under the undisputed findings of the district court. He is a federal public defender that was named by the Court of Appeals, and he's going to have that over a judicial officer at a hearing? That doesn't make any sense to me. I'm sorry, I'm not. I'm not quite. Can you repeat that? Well, I heard you say that Martinez would have influence over the final hearing. Yes, he would. There's a judicial officer presiding, a district judge or circuit judge presiding at that, and he's going to have influence over that officer? Well, he would in the sense that the district court found, and this was, I believe, at page 278 of the opinion, that his views would have been sought as the unit executive. And Martinez explained this further in his testimony that essentially if he said, for example, the office counsel seeking views of someone doesn't mean that they necessarily have influence. The presiding officer might well say, well, those are really stupid views. I don't understand why consulting someone whose unit is involved is in any way even unusual. Well, I suppose I can give you a practical example based on the very facts of this case and the way that this played out. It did play out because there was no hearing. We're talking about what would have happened had there been a hearing, and there wasn't a hearing. So I don't understand why merely consulting a person who's involved means that you would believe them or give them credit or do what they want. Well, I think that goes to his conflict of interest in the sense that Martinez, he was not merely representing the institution as a unit executive. But if there had been a hearing, there's no necessary conflict of interest between Martinez and whoever would have been the hearing officer. Or no, who knows? I mean, you're sort of suggesting that inherently they would have been in cahoots in some way, but I don't understand why that is so. I'm not suggesting that they would have been in cahoots. What I'm saying is exactly what the Second Circuit said in Doe v. Columbia, which is when a biased party has influence, they provide input on the decision, even if they are not the decision maker themselves, that that is still unfair. That is still fundamentally unfair. Let's do this. Look, you're down to the last two minutes of your rebuttal time. I want you to still have a little rebuttal time. If there are two more main points, just quickly mention why you said four reasons. You've talked about two. Give us the other two, and then I'm going to have you stop and wait for the government to respond. Yes, thank you, Your Honor. The other two being what I've already covered about the judicial integrity officer expressing concern and uncertainty about whether remedies could even be enforced in a final hearing. She was a national resource on the plan, and she even said, I'd like to better understand whether FPDs are adequately protected by EDR remedies. And, again, I would point the court to the McCarthy v. Madigan decision about some doubt about whether the forum is able to order relief. That's exactly what the district court found here. So the district court made an error of law. The fourth reason being that even if I had gone through the final process, as I said in my opening statement, I would not have been protected from further sexual harassment and retaliation because Martinez was the final decision maker on discipline, and he did not even follow even the meager recommendations in the investigation report. So there would have simply been no way for me to work in that environment. I also want to say, just before we turn to rebuttal, just about the remedies, I do want to clarify that I've never said I would not take reinstatement. I did not want to lose my job in the first place. But there are issues with the sexual harassers still being employed there and the fact that the defendants have defended his conduct for seven years from the EDR process until now. They continue to say he did nothing wrong, including in their briefs to this court. But that is something that should be considered on remand. The district court would be required to consider reinstatement as the presumptive remedy or other comparable equitable remedies, such as a position in a different office. And so I think that that would be a very important component of a remedies hearing on remand, but we never reached that part of the case. Thank you. All right. Very good. All right. Let's hear from the government. Good afternoon. May it please the court. Kevin Soter from the Department of Justice for the defendants. If I could just take a minute or two for this at the outset, I think it may be helpful to make sure we're clear on the legal claims that remained on remand and how the voluminous record in this case maps on to each of them. So after this court's prior decision, plaintiff had two claims remaining, one for due process, one for equal protection on equal protection, plaintiff needs to establish at least three things at trial. First, she needed to show that defendants responded to her allegations with deliberate indifference. That is that their response was clearly unreasonable in light of known circumstances. Second, plaintiff needed to show that the defendants responded to her allegations with discriminatory intent. And third, plaintiff needed to show that she was constructively discharged and therefore can obtain prospective equitable relief on this claim. On due process, plaintiff's claim depended on her ability to establish that she was reasonably led to believe that the chief judge of the Fourth Circuit or his designee would abdicate the decision making authority vested in them under the plain terms of the EDR plan and instead hand that authority over to Mr. Martinez, the representative of the office accused of misconduct. The district court carefully considered all the evidence presented in this case over the course of a six day bench trial and then issued an extraordinarily thorough decision explaining why the evidence doesn't support either plaintiff's claims. As the district court recognized, like many situations of this nature, there are some messy facts here and I'm not here today to try to convince you that everything that happened was perfect. But the district court already went through the rigorous process of resolving the material factual disputes and applying the law as set forth in this court's prior decision to those facts. On the facts, after arresting her case at trial without calling a single witness, plaintiff is now asking this court to second guess the district court's well-supported factual findings. This court should affirm and I welcome the court's questions. Is there any legal effect to be given to the plaintiff's decision not to accept the Asheville position when a physical office was offered? I certainly think that is one of many facts that kind of provide helpful context in this case. I think sort of going back to categorizing which claim that could go to, I certainly think that is one of many indicia that plaintiff's claims were not responded to with deliberate indifference or discriminatory intent on the equal protection claim. And to just briefly recap the evidence on that to the extent the court wants to talk about the protection claim, which I take it hasn't been the focus of the discussion so far today. But the legal standard for deliberate indifference is whether the response was clearly unreasonable in light of known circumstances. There are several cases cited in the brief and in the district court's decision that explain how high the standard is. Among others, the Fourth Circuit's decision in SB says the defendant's actions do not become fairly unreasonable simply because a victim advocated for stronger remedial measures. The standard has been compared more to recklessness under a criminal law standard than to mere negligence. So with that standard in mind, the steps that were taken by the defendants to this case after plaintiff brought forward her allegations of harassment by the first assistant were that she was separated from the first assistant as her mentor. He was instructed not to contact her. She was taken out of his supervisory chain, was told she wouldn't be assigned work from him. The organizational chart was altered to take her out of that supervisory chain. And at plaintiff's request, she was authorized to telework during the pendency of the investigation. Ms. Strickland has argued a few minutes ago that the telework was not an acceptable alternative because it cut her off from contact with other employees in the office and from the normal course. What is your response to that? I would urge the court to look at the district court's discussion of this issue, in particular pages 3597 to 98 of the joint appendix and footnote 43. What I believe the district court notes there is that on August 10th of 2018, which is the day after Ms. Strickland told Mr. Martinez that her allegations were about harassment, Ms. Strickland requested telework and stated that she was happy with that as a long-term arrangement. As the district court noted, there was no point after that at which Ms. Strickland came to the office and said, this is not a suitable arrangement. I want to be separated in some other way or I want to be able to come back to this particular office. She had mentioned already that she was interested in the transfer to Asheville, which as your Honor notes, was offered to her in the course of mediation. And at that point, Ms. Strickland rejected that offer. One of the centerpieces of Ms. Strickland's argument, as I understood it, was that in the absence of serious discipline against the harasser, no other arrangement or remedy would be sufficient, basically by definition. Going to Asheville without it would, you know, people would suspect her of something or anyway, that seems to be key to a lot of the argument that we've heard. And I would appreciate your response to that and to the idea of the absence of discipline. Thank you, Your Honor, and I appreciate the chance to address that. I think it's helpful to look at this plan and in particular to look at what Chapter 9 of this plan says and to look at what Chapter 10 of this plan says. Discipline is something that is covered. Essentially, Chapter 9 describes everyday management decisions that any office would want to make, including anyone who witnesses misconduct reporting it and then that misconduct being addressed in the appropriate course by the managing office. So here, when Ms. Strickland came to Mr. Martinez in his office on August 9th of 2018 and said that she was alleging sexual harassment by the first assistant, Mr. Martinez reported that to the EDR coordinator for the Fourth Circuit so that it could be investigated as a matter of determining whether to discipline the first assistant. That is a very distinct process from Chapter 10, which is a dispute resolution procedure in which the only parties are the complainant, Ms. Strickland in this case, and the employing office. In that process, the accused party is not a party and does not have the type of due process rights that he may well have in the context of any proceedings to discipline him separately. And it's important, I think, to keep those conceptually separate and recognize that when you look at the remedies provision of Chapter 10, which is the proceeding in which the plaintiff is a party or the complainant is a party at that point, and you look at the remedies listed, which are in Section 12 of Chapter 10, this starts at page 103 of the supplemental appendix that we submitted, you will see that there are many remedies that are available to a complainant. I understood that, but I think I may not have made my question clear. As I understood the argument, it is that the very absence of discipline, whether through Chapter 9 or in some other way, would make any of the Chapter 10 remedies pointless, futile, insufficient, whatever word you want to say. I understood that to be the argument, which is not really a technical argument about the relationship, but sort of a factual argument in a sense about how, whether anything could be effective in the absence of discipline. So, of course, in this case, the report that had been prepared into the allegation of wrongful conduct concluded that relatively modest discipline short of termination was appropriate. And so I think that's important context to keep in mind and understanding why it made sense, given that the investigator had found the claims that issued to be, quote, flimsy, that this was held in abeyance so that the plaintiff would have a full opportunity to attempt to obtain a different finding on that issue through the formal process in which she was a party. As to the remedies that are specified under the plan, first of all, I think it's important to keep in mind that this court's prior decision focused on a different aspect of plaintiff's due process claim that I would like to talk about. But as to that, I think what the plan says at page, still supplemental appendix 103, is that a remedy may be directed at correcting a past violation, prospectively ensuring compliance with the rights protected by this plan or post, and a remedy shall be tailored as closely as possible to the specific violation alleged. There is then a list of possible remedies, which are not an exhaustive list, including placement in a comparable position, placement in a position previously denied. I certainly think it would be consistent with the remedial portion of this plan for the presiding judicial officer to have considered whether ordering the office to permit Ms. Strickland to work remotely, permanently, as she had requested, or permitting her to work from the actual office as had been offered to her. I think those are the types of remedies that may be available to the complainant. What is not contemplated here is that the remedy in this process will be disciplined for the alleged wrongdoer. Now, of course, I think there's nothing in this record to suggest that if a finding had been made, that the allegations were substantiated, and that there was ongoing or even just past conduct that was at the level of fireable sexual harassment. I think that would be a different case than this one, but it is important to keep in mind for the due process claim, what really matters is that the normal rule is that when you don't go through a process that has adequate procedures, you don't get to then say that it's a procedural due process violation. Ms Strickland basically claims she was coerced to drop the Chapter 10 proceedings. Now, what's your response to that? The district court found as a factual matter that she was not coerced. I think that addresses a finding that this court is deferential to, and I think the facts support that finding amply. As to the issue on which plaintiff is focused throughout this litigation in which this court directed the district court on remand to focus, plaintiff's argument was that participating in this process would be futile because the final decision maker on her complaint would be Mr. Martinez. But in order for that to happen, as some of the discussion has indicated so far, that would have to mean that when the plan says the decision is made by a judicial officer, which is the Fourth Circuit chief judge or a designee, that person just abdicates that responsibility and hands it over to the representative of the accused office. What the facts actually show is the district court went through in substantial detail is that Mr. Martinez's views would have been sought as the representative of the accused party. And just as in any situation in which a judge may well ask the parties for their views on what should happen, the neutral decision maker in this process may well have asked Mr. Martinez what should happen as a result of the findings in the case. That doesn't mean that he was being given the reins to decide the case himself. And so that theory of futility, I think, quite clearly fails. I also want to emphasize that I think plaintiff has mentioned a few times this morning or this afternoon that this is an exhaustion requirement. The cases that we cited for this proposition actually make clear that as a legal matter, we are not at all talking about exhaustion. The Dunasec case from the Seventh Circuit and the Dotson case from the Second Circuit rely on what Dunasec called the logical proposition that it's not a procedural due process violation if a process is available that the plaintiff doesn't use. That does, quote, not amount to a requirement of exhaustion. Counsel, counsel, and it is in her reply brief, by the way, that McCarthy v. Madigan factors. The very first one is unreasonable time frame for administrative action says exhaustion is not required. United States Supreme Court establishing a general doctrine. So are you sure that isn't the standard we should be applying instead of what you're quoting? Yes, I am quoting cases that make clear that as a meaning of what procedural due process requires, saying that someone who opts out of a process does not have a valid procedural due process claim against that process is not an exhaustion requirement. And so you don't go through and figure out whether there should be exceptions from the exhaustion requirement. I think maybe it would help to explain. I think what exhaustion would mean is let's say that plaintiff was telling us that she that that it's necessary to reach a claim of sexual harassment in the first instance. And that was a claim that she could have brought through the administrative process, but didn't and then tried to bring to court in the first instance. I think that would be kind of an exhaustion type of argument. But what we're talking about here is saying that the process itself was flawed and that that's why I left it. Calling that an exhaustion requirement is just not right. I mean, these cases. Now, counsel, I was changing. Maybe I was too swift there, but I'm quoting the Supreme Court. It says unreasonable time frame for administrative office is one of the four or five factors that the McCarthy case lists. And by the way, the Fourth Circuit language is function is designed when administrative process does not function is designed. Those weren't her reply brief. So this is your chance to talk about that. And they use the word exhaustion. So just to be clear, I think you're evading the question candidly. But I apologize if I'm not being clear. I would like to clarify what McCarthy versus Madigan stands for is what circumstances administrative exhaustion can be excused in. That is why the word exhaustion appears throughout that case. That is a whole area of law that we have not invoked. Plaintiff is replying, saying the defendants have attempted to apply an exhaustion requirement. And here is why I get an exception from that. But we are not asking for an exhaustion requirement. The cases we have cited and the proposition we are talking about comes from 1983 cases, which, of course, are not subject to an exhaustion requirement. And that is why those cases directly say that the proposition they are relying on, that when you go into a process and choose to quit, it's not a procedural due process violation. In ordinary circumstances applies on all courts here. And, of course, that's I think what this court's prior decision recognizes is that that is the ordinary principle. This court allowed plaintiff's claims to proceed because she had identified in her complaint an allegation that would render that process futile. And that's why she didn't have the reason that these claims weren't raised up to the judicial decision maker who would have been appointed had plaintiff brought the formal complaint under Chapter 10, Section 10 of this plan. And as to that. And I thought, counsel, I can't resist following up. I thought the district court all but found there was unreasonable, at least uncertainty. You correct me of what what the district court really said. Time frame for administrative actions that it took far too long was indefinite. And by the way, the Supreme Court also uses indefinite time frame. So so tell me, tell me the finding of the district court that applies to that premise. And I don't care whether you call it exhaustion or what you call it, but just please tell me the factual finding the district court that applies. The factual finding that the district court made was that nothing in this case raises rises to the level of a constitutional violation. And as to the due process claim under this doesn't sound like a council, that doesn't sound like a fact. The facts that were relevant to the legal question before the district court, though, is what I'm talking about. And the fact that was relevant to that, the only fact that was key to that was whether Mr. Clinton came to the reasonable belief that the final decision maker as to the process had she gone through with it would have been Mr. Martinez. That was the legal standard that this court set forth. And that was the fact that the plaintiff failed to prove. The reason that this exhaustion issue was not something on which I believe the district court may express factual findings is that plaintiff is raising this as an argument in reply. In this court for the first time in response to an argument that is not an exhaustion argument. And saying why she should be excused from an exhaustion argument that we have not asked to be applied here. Didn't Mr. Clinton also generally talk about what she feels is fundamental unfairness in this EDR process, in addition to whether or not Martinez would be the final decision maker? I mean, did this court really say that's the only way she could show that it would be futile to have proceeded to Chapter 10? And maybe she could show, in addition, there were just so many fundamental flaws in the process that it was a due process violation. So I understand this court to have taken all of the arguments that the plaintiff made, many of which overlap with the ones here and to kind of lasered in on this specific way in which the process could have been futile. To the extent I think the district court also considered, in addition to saying that he thought that that was the focus, whether there was any other basis in the record for concluding that moving forward, the process would be futile. And the district court said no. And I think that makes a lot of sense because all of these sort of things that had happened up to the point when the plaintiff withdrew her claim were all part of the informal stages of counseling and mediation before you ever get to the part where you file a formal complaint and get a judicial officer appointed. And so if you had followed through with that, you could have raised all of these arguments about, well, I don't want people tainted by this investigation that happened. I think there was a mistake to not discipline this person. I think these are very serious accusations that aren't being taken seriously. Now, all of these things could be presented to the judge who's appointed to preside over that and can determine, based on the extensive procedures that are set forth in Chapter 10, whether to order additional investigation, whether to order discovery. The complainant can put witnesses forward and cross-examine witnesses who are offered. All of these things would have happened, and plaintiff didn't show that going to that step was futile. I think the other argument that I heard plaintiff to make today as to futility specifically, I suppose I think plaintiff identified four things. One of them is the one that we've been talking about with the lack of disqualification of Mr. Martinez from his role representing his own office. The other one that I heard plaintiff to focus on was placing discipline in abeyance. But I think it's helpful to, again, step back and remember the important distinction between disciplining the wrongdoer and remedying the complaint of the alleged victim. There is, as we note in our brief, always potential overlap between those things. But when you look at the specific facts of this case, as the district court did in exhaustive detail, what you see is that the investigation focused on the allegation of wrongful conduct by the first assistant found that relatively modest measures were appropriate and specifically rejected the argument that plaintiff has continued to make, I believe, which is that nothing short of the first assistant being fired would remedy her claims. That's not something that she has a cognizable due process interest in under the Constitution. She has a due process interest as this court recognized in its prior decision in a harassment free workplace. And there are a variety of remedies that the judicial officer could have considered had had this process continued, but it was cut off at the outset. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. I do not at this time. Thank you. I do not either. Okay, do you have any closing comments you'd like to make Mr. Souter or we'll turn it back to actually, I think Mr. was used up almost all of her little time, but we'll give her a few minutes to to to. Nothing further we ask that you. Okay, thank you very much. All right, Mr Clinton, you may respond. Thank you. I'll try to move through these points fairly quickly. 1st on judge scrapers question about discipline. This idea that discipline to prevent and remedy harassment is somehow not central to the EDR process is contradicted by the EDR handbook itself, which specifically provides guidance on this issue on page 72. It says that if any part of the proceeding should be held in advance, it should be the final hearing to allow the office to promptly correct the harassing behavior because otherwise, the only remedy that may be effective in a final hearing is prompt corrective action. And the hearing officer might have to order the office to correct the harassing behavior. Again, that is on page 72. And that is consistent happens in a situation like this, though, where the. Initially, it was not viewed as being a fireable offense. It was viewed as something lesser. And in your view, that's incorrect. If there is a final hearing before a judicial officer, even though the procedures are separate. Well, I guess I would say I think the defendants are acting like imposing counseling or a reprimand is just not a big deal and they can just wait to do it whenever they get around to it. But even that could have made a difference in this case. Even that could have been meaningful. It could have been some sort of deterrent. But the reason why prompt and effective corrective action is so important is it is about making the victim safe and it is about making the entire office safe. So it is not reasonable to delay indefinitely taking disciplinary action. And I do want to tie that in because I don't believe that's just a factual argument. It ties in directly with what feminist majority found about. I've said it before when there's an official decision not to remedy a violation. The other thing that feminist majority said is that when the office has said the employer has said it has done everything that it can do, the reviewing court should not take that at face value, but should also review whether there were other obvious and reasonable steps that the employer could have taken. Here, discipline or corrective action would have been an obvious and reasonable step. And if that was insufficient, it could have been reviewed in the final hearing. But because there was no decision made on it, it could not have even been reviewed. I also want to point out that whether you call it exhaustion or coercion, this is a coercion due process claim. This court previously used the words coercion and futility. And that is because EDR is the exclusive remedy for judiciary employees. So if the EDR process does not function as designed, then functionally, the judiciary employee is being asked to work in an environment that has no meaningful protections from harassment or discrimination. And this court previously said that if the EDR process was futile, which is in itself an exception to the exhaustion requirement, generally in administrative proceedings, then it would be reasonable to withdraw the complaint and resign. So I'm just not seeing the distinction that opposing counsel is making. I think the two standards in this context are one in the same. And I also want to just make one final point, which is that on the reasonable uncertainty, the Department of Justice itself, the Office of Legal Counsel, has issued an opinion about EDR proceedings being strictly administrative. And that comment was made in the context of federal defender offices being independent from the courts. So it's not just a simple matter of just reading the text of the EDR plan. And in fact, this court said that in its prior decision. It said the plan says what it says. What matters is what I was told. And the district court's finding on that issue completely dovetails with the McCarthy v. Madison standard and shows that proceeding to a final hearing would have been futile. Thank you very much. All right. Counsel, thank you both for your arguments. The court will take that under advisement and will issue an opinion in due course. Clerk, you may adjourn court. This honorable court stands adjourned. Sine die. God save the United States and this honorable court.
judges: Ronald Lee Gilman, Duane Benton, Susan P. Graber